UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROXANNE LOGUE, | Case No. 3:12-cv-05919-KLS |
| Plaintiff, | |
| v. | ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 5, 2007, plaintiff filed an application for SSI benefits, alleging disability as of December 1, 2005, due to swelling in her hands, arthritis, possible Lyme disease, and memory problems. See ECF #11, Administrative Record ("AR") 15, 188. That application was denied upon initial administrative review on October 5, 2007, and on reconsideration on February 8, 2008. See AR 15. A hearing was held before an administrative law judge ("ALJ") on June 20,

ORDER - 1

2011, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert, a psychological expert and a vocational expert. See AR 30-66.

In a decision dated July 1, 2011, the ALJ determined plaintiff to be not disabled. See AR 15-23.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 17, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481.  On October 23, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on January 4, 2013. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits because the ALJ erred: (1) in rejecting the opinion evidence from plaintiff's treating physician, J. Louise Ullom, M.D.; (2) in failing to obtain a consultative examination to assess plaintiff's mental health impairments; (3) in rejecting plaintiff's handling limitations; and (4) in failing to find plaintiff's degenerative joint disease of the cervical spine, arthritis, lost grip strength, Jones fracture, diffuse cervical spondylosis, and fatigue to be severe impairments and to include the limitations caused thereby in the assessment of her residual functional capacity.  For the reasons set forth below, the Court agrees the ALJ erred in failing to obtain a mental health consultative examination, and thus on that basis in determining plaintiff to be not disabled, but finds that while defendant's decision to deny benefits should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

At the hearing in this case, the psychological expert, Dr. Margaret Moore, testified in

relevant part as follows:

> . . . I'm a bit stumped by how little information we really have here
> [regarding plaintiff's psychological condition].  We actually have a record that
> does not indicate any mental health treatment in any kind of formal way.
> [She] did have some encounters with her primary care doctor, apparently, just
> talking about family stress, that sort of thing.  He also made mention of
> confusion and requesting to be tested to see if she had some sort of an
> infectious disease that might account for that.  Aside from that, essentially all
> that we have to go on is a consultative exam [by Emma Joan H.] Billings[,
> Ph.D.,] done in September of 2007.  So significantly out of date, but
> essentially concluding that there was no diagnosis to be made from a mental
> health perspective.  So [s]he gave no diagnosis and with that in mind, we
> really have no mental health, medically determinable impairment formally
> stated in this record.
>
> The one hesitation that I have aside from having such an out-of-date
> record is that there were at least two findings.  During the consultative exam
> on this lady's testing that were puzzling to me.  And it was perhaps even more
> puzzling that Dr. Billings did not really address them in any meaningful way.
> Specifically, when this lady did the Trails [Making Part-A and Part-B] test,
> which is with the rough screening instrument for a possibility of cognitive
> compromise of some sort.  Her second score under Part[-]B was exceedingly
> high.  Dr. Billings said that she became confused.  And that's one of her
> allegations that was concerning to me.
>
> Also on the Wechsler [Memory Scale-Third Edition (WMS-III)] score,
> she had a much lower working memory for -- than any of the others.  And
> when you analyze the particulars of the working -- what makes up the
> working memory score, she had at least one subtest, one part of the whole
> gallery of the Wechsler memory score that was really low, significantly low.
> And the other part of the Wechsler memory that it's somewhat similar to what
> she was asked to do in the Trails test, was also lower.
>
> So we have some things here that are puzzling to me and yet, I'm sort
> of stuck with a record that says she has really no issues.  So I was hoping to
> arrive at the hearing today to hear that we had more information outstanding
> and I guess that's not the case.  So I'm not sure of where to go with this.
> Formally, no medically determinable impairment and therefore, no associated
> limitations from the mental health perspective.

AR 42-44.  On being asked by plaintiff's counsel whether there would be a benefit in conducting

more recent psychological testing, Dr. Moore responded that:

> . . . Well, you know me.  I always welcome more information, as
> opposed to less information, some further understanding of why she might

ORDER - 4

have had these -- what I would consider outlayer score[s].  And that's exactly
what they are.  Why they were so different from all the others.  There may
have been anxiety.  They may have been problems with night sleep before,
loss of focus.  There may indicate a significant finding.  I just can't tell from
the records that we have.

        So certainly, I'd welcome more information.  Testing is always good.
However, I think there is also a real benefit from the input of people who see
her across time, as opposed to just a one-time evaluation.  So if there's any
sort of -- that sort of information out there, that would be incredibly helpful.

AR 45.  Then in response to the ALJ's question as to whether it was possible "with any sort of

reasonable certainty to relate whatever findings" from more recent psychological testing to those

in 2007, Dr. Moore further testified:

        . . . Potentially, yes.  And I'm also having difficulty being more
specific.  But the bottom line here is that, as I read her record, most of her
medical complaints were of the neurological neuro cognitive sort, confusion,
memory loss, some things that [s]he said to her doctor that even led to
neurological work-up.  And with that history in mind and, even though they
did not apparently find significant things.  And then we have, as I mentioned,
the test findings and the consultative exam that were unusual.  So if we were
to do a refresher set of testing, it would be important to do the Wechsler
memory again.  It would be important to do the Trails again.  It would be
important to do a basic cognitive baseline kind of testing.  And we would be
looking to see if there is stability, if things have worsened or if they're
improved. . . .

AR 46-47.

     The ALJ did not obtain any additional psychological testing, but instead in her decision

addressed the opinion evidence in the record regarding plaintiff's mental health impairments in

relevant part as follows:

A consultative examination was performed in September 2007 by Emma Joan
Billings, Ph.D., clinical psychologist, due to complaints of chronic pain and
memory problems.  She had never been psychiatrically hospitalized nor
participated in mental health counseling. . . . On exam, she was cooperative
with good eye contact.  She was oriented times three.  She described herself as
being in a good mood the day of the assessment.  Test results were considered
valid.  Memory testing (WMS-III) scores ranged from average to borderline.
During the task, she had a brief period of distraction, which artificially skewed
the results.  Trailmaking test scores reflected some slowed processes when

ORDER - 5

dealing with complex information.  However, the score was much lower than would be expected given her WMS-III scores.  No diagnosis was made.  Dr. Billings noted a brief work history, and opined she did not appear to have any memory difficulties that would prevent her from learning new activities or functioning in an occupation.  (Exhibit 12F)

. . .

Dr. Moore, a medical expert in psychology, . . . testified that she was stumped by the paucity of information, noting no psychiatric treatment other than some treating physician discussion only.  Dr. Moore testified that review of the consultative examination indicated the claimant scored exceedingly high on Trails B, yet had a very low working memory score on the Wechsler.  Dr. Moore testified that there was nothing to base a diagnosis on, and therefore, she could identify no limitations.  Upon cross examination, Dr. Moore noted that the claimant's complaints are primarily neurological, and with her history, it is possible there are psychiatric issues, but the evidence does not exist in the record to support an actual conclusion of such.

After careful review of the longitudinal record presented here, the undersigned finds that the claimant does not have a medically determinable mental impairment.  Both the consultative examiner and Dr. Moore concluded that there is no basis to support any mental diagnosis, and therefore, no work-like limitations can be identified.

AR 19-20.  Plaintiff argues the ALJ failed to properly develop the record by not obtaining an additional consultative psychological examination.  The Court agrees.

An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  It is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," though, that the duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Although the ALJ did not find the record in this case to be inadequate in regard to the evidence regarding plaintiff's mental health condition, that evidence is ambiguous concerning the nature and extent thereof.

Specifically, as noted above, while Dr. Moore did opine that the record failed to establish

ORDER - 6

the existence of a formal medically determinable mental impairment, she also testified that the puzzling test scores Dr. Billings obtained caused at least some hesitation on her part in regard to that opinion, but she was stuck with it due to the paucity of the record.  Also as noted above, Dr. Moore went on to testify that more recent psychological testing would be good, and that it was possible with "reasonable certainty" to relate the results obtained from such testing back to the period of time that Dr. Billings conducted her initial testing.  Accordingly, given the hesitation Dr. Moore expressed in regard to her non-medically determinable mental impairment testimony, and the very real possibility that further psychological testing would remove that ambiguity from the record, it is not at all clear why the ALJ did not seek such testing.

Although it is true as defendant points out that Dr. Moore further testified that evidence from medical providers who see plaintiff "across time, as opposed to just a one-time evaluation" would be good as well (AR 45), this does not take away from the fact that Dr. Moore also clearly noted the benefit of obtaining additional testing.  That is, Dr. Moore felt both types of evidence would be helpful, but recognized that while she was stuck with the historical record as it existed in terms of longitudinal treatment, more recent psychological testing – albeit certainly in the nature of a "one-time evaluation" – could be obtained and could be related back to when the original testing occurred with "reasonable certainty."  Given the ALJ's duty to "fully and fairly" develop the record, and the ALJ's failure to explain why she did not obtain the additional testing Dr. Moore believed could help in resolving the above-noted ambiguity in the medical evidence in the record, that failure constitutes reversible error.

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

ORDER - 7

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the nature and extent of plaintiff's mental impairments

and limitations – and therefore the impact such impairments and limitations, if any, would have

on her residual functional capacity and ability to work[2] – remand for further consideration of this

issue is warranted.

---

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20
C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability
determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination
"cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the
claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related
activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity
("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at
step five to determine whether he or she can do other work. See id.

The ALJ in this case did not include any mental functional limitations in her assessment of plaintiff's RFC.
See AR 21.  Nor did the ALJ include any such limitations in the hypothetical question she posed to the vocational
expert at the hearing. See AR 64.  But because, as discussed above, the record is ambiguous regarding the nature and
extent of plaintiff's mental health impairments and limitations, it is not at all clear at this time that the ALJ's RFC
assessment and the hypothetical question she posed completely and accurately describe all of plaintiff's functional
limitations.  Given that the ALJ relied on the testimony of the vocational expert in finding plaintiff to be capable of
performing her past relevant work (see AR 22-23), it also is not at all clear that the ALJ's step four determination –
and thus her finding of non-disability – is supported by substantial evidence.

ORDER - 8

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 22nd day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 9